UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 21-cv-01087-REB

B. Z.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

## ORDER REVERSING DISABILITY DECISION AND REMANDING TO COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed April 19, 2021, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*[2] I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges he is disabled as a result of bipolar disorder, obesity, anxiety, intellectual disability, and a learning disability. After his application for supplemental

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] Although the parties consented to have the matter referred to and determined by a United States magistrate judge (*see* [#12], filed August 30, 2021), I exercise my discretion under **D.C.COLO.LAPR** 72.2(d) to decline to enter an order of reference under 28 U.S.C. § 636(c).

security income benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on June 14, 2019. At the time of the hearing, plaintiff was 32 years old. He did not complete high school and has no relevant past work experience. He has not engaged in substantial gainful activity since November 1, 2017, the date of his application for benefits.[3]

The ALJ found plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the medical evidence established plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found plaintiff had the residual functional capacity to perform a reduced range of medium, unskilled work which, *inter alia*, required no interaction with the general public and only occasional, non-personal interaction with co-workers and supervisors, but that he could adapt to routine changes in a work setting. Although plaintiff had no past relevant work experience, the ALJ concluded there were jobs existing in significant numbers in the national and local economies that he could perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous

---

[3] A previous application for child's benefits and supplemental security benefits was denied in January 2015 (*see* Tr. 90-103, 107-110), and does not appear to have been appealed to the district court.

work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Acting Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Acting Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work

in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. §§ 416.920(a)(4) & (b)-(g). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Acting Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Acting Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Acting Commissioner. *Id.*

### III.  LEGAL ANALYSIS

By this appeal, plaintiff presents both a constitutional challenge and a substantive challenge. While the first provides no basis for relief, the second does. I therefore reverse and remand.

Plaintiff's constitutional argument is premised on the contention that because statutory limits on the President's ability to remove the Commissioner of Social Security violate constitutional separation-of-powers principles, the ALJ lacked authority to render a decision on plaintiff's claim for benefits. However, plaintiff did not raise this issue before the Appeals Council (*see* Tr. 191), nor was it presented in his complaint to this court. He thus has waived the issue. **See United States v. Olano**, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993).

The requirements of Rule 8 of the Federal Rules of Civil Procedure are not daunting, but they still obligate a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." **FED. R. CIV.** P. 8(a)(2). Accordingly,

> to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and what specific legal right the plaintiff believes the defendant violated. After all, these are, very basically put, the elements that enable the legal system to get weaving – permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits.

**Nascious v. Two Unknown B.I.C.E. Agents**, 492 F.3d 1158, 1163 (10th Cir. 2007). **See also Polovino v. International Brotherhood of Electrical Workers, AFL-CIO**,

2015 WL 4716543 at *4 (N.D. Okla. Aug. 7, 2015) ("[A]t a bare minimum, in addition to sufficient factual allegations, . . . a complaint must specify the legal basis for any claim."). Plaintiff's failure to assert this claim in his complaint violated these precepts and failed to give the Acting Commissioner the notice of plaintiff's claims on appeal to which she was entitled. Raising the issue for the first time in briefing is insufficient to preserve it for this court's consideration. *See L.J. v. Kijakazi*, 2021 WL 6125398 at *3 (D. Colo. Dec. 28, 2021); *Shannon R. v. Commissioner of Social Security*, 2021 WL 5371394 at *6-*7 (W.D. Wash. Nov. 18, 2021).

Yet even if the constitutional claim were not procedurally barred, it fails substantively. Plaintiff's argument is premised on two recent Supreme Court decisions, *Seila Law v. Consumer Financial Protection Board*, – U.S. –, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020), and *Collins v. Yellen*, – U.S. –, 141 S. Ct. 1761, 1784, 210 L.Ed.2d 432 (2021). In these decisions, the Court held that statutory limitations on the President's ability to remove the heads of the challenged agencies (in *Seila Law*, the Consumer Financial Protection Board; in *Collins*, the Federal Housing Finance Authority) violated Article II separation-of-powers principles.[4] *Seila Law*, 140 S.Ct. at 2204; *Collins*, 141 S.Ct. at 1784. Because the Social Security Administration likewise is an Executive Branch agency headed by a single individual removable "only pursuant to a finding by the President of neglect of duty or malfeasance in office," 42 U.S.C. § 902(a)(3), plaintiff concludes these protections also are unconstitutional.

---

[4] Because the executive power under Article II of the Constitution belongs wholly and exclusively to the President, he retains ultimate responsibility for its use by any inferior officers to whom he delegates that power. Limitations on the President's authority to remove inferior officers exercising such delegated authority impermissibly interfere with his "active obligation to supervise" those officers. *Seila Law*, 140 S. Ct. at 2203 (citation and internal quotation marks omitted).

No one disagrees. The Acting Commissioner here concedes the point. (**Def. Resp. Br.** at 7.) The Department of Justice has so concluded. *See Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C – (Slip Op. at 10-15) (July 8, 2021) [hereinafter "DOJ Opinion"] (available at: https://www.justice.gov/olc) (last accessed: January 10, 2022).) District courts likewise concur. *See **Hutchens v. Kijakazi***, 2021 WL 5834409 at *6 (M.D.N.C. Dec. 9, 2021); ***Shannon R.***, 2021 WL 5371394 at *7. Most dramatically, the current Administration acknowledged the validity of the argument by removing the then-extant Commissioner without cause.[5] (***See*** Jim Tankersley, *President Biden fired the head of the Social Security Administration*, NEW YORK TIMES (July 9, 2021) (available at: https://www.nytimes.com/2021/07/09/us/politics/biden-social-security-andrew-saul-fired.html) (last accessed: January 10, 2022).

Despite this consensus, plaintiff is not perforce entitled to a remand for a new hearing because "the unlawfulness of the removal provision does not strip the [Commissioner] of the power to undertake the other responsibilities of his office." ***Collins***, 141 S. Ct. at 1788 n.23. Because plaintiff has neither argued nor demonstrated a constitutional defect in the way in which the quondam Commissioner was appointed, the actions he took while in office (and those of the ALJs who exercised his delegated authority to issue disability decisions) are not void. ***Id.*** at 1787. Accordingly, plaintiff is not entitled to relief unless he can show the unconstitutional

---

[5] Plaintiff does not explain why he believes "the constitutional defect . . . could have been avoided if [quondam Commissioner Andrew] Saul had simply stepped down in the wake of *Seila Law*" (**Plf. Br.** at 9), whereas his removal by the President does not accomplish that result.

removal provision itself caused him compensable harm.  *Id.* at 1788-89.

Plaintiff has not even acknowledged his burden in this regard, much less attempted to satisfy it.  For this reason, his constitutional arguments do not warrant remand for further hearing.[6]  Plaintiff's substantive arguments, however, do.  These center on the ALJ's analysis of the opinion of the consultative examiner, Dr. Robert Danaher.  Specifically, plaintiff maintains that Dr. Danaher's opinions support a finding of presumptive disability under the Acting Commissioner's listing of impairments and, further, that the ALJ failed to adequately explain why she did not find the doctor's conclusions wholly persuasive.  Because of these and other problems with the ALJ's consideration of the evidence, I must remand.  First, however, a brief recitation of the relevant underlying facts is necessary.

Plaintiff suffers primarily from bipolar disorder and anxiety.  He attended school until he was 20 years old but only completed 11th grade.  He has never held a job for more than a few weeks and has lived with his family his entire life.  Nevertheless, plaintiff has long sought treatment for his condition.  (**See** Tr. 451 (reporting plaintiff had been receiving mental health treatment since the age of 5).)  In November 2017, shortly after he applied for supplemental security income benefits, plaintiff self-referred to Mind Springs Health in Grand Junction, Colorado.  He reported he had been working with a mental health counselor for the previous two years but because his new primary care physician was not comfortable prescribing him mental health medications, he wished to establish care with Mind Springs.  (Tr. 450.)  At the hearing, plaintiff's mother testified

---

[6] Given this failure, I do not address the Acting Commissioner's further argument suggesting plaintiff could not show compensable harm under any circumstances because a prior Acting Commissioner ratified the appointments of all then-existing ALJs, including the ALJ who issued the decision in plaintiff's case, in mid-2018.

that plaintiff was able to receive care through Mind Springs through Medicaid.  (Tr. 63.)

The record reflects plaintiff's course of treatment through Mind Springs was productive.  Whereas plaintiff reported his previous medication regimen had been only intermittently effective, partially due to his own inconsistency in taking his medications, he wanted to find a more effective plan.  (Tr. 407.)  Through the middle of 2018, plaintiff continued regular treatment at Mind Springs.  Adjustments to his medications, including principally the addition of Depakote, resulted in a substantial improvement in his depressive symptoms.  (Tr. 865.)  At the hearing, plaintiff testified that these months were "probably the healthiest time of my life."  (Tr. 56.)  It was during this time period that two state agency psychologists reviewed the medical record and opined plaintiff was not disabled.  (***See*** Tr. 118-125, 482-496.)

However, in July 2018, plaintiff and his mother relocated to Oklahoma because plaintiff's mother wanted to be closer to her other son and his family.  In Oklahoma, plaintiff no longer was eligible for services under Medicaid.  (***See*** Tr. 71.)[7]  Although plaintiff attempted to access free psychiatric care locally, the psychiatrist to whom he was initially assigned wanted to change his medications.  His requests to change doctors or establish a relationship with a counselor went unanswered.  (Tr. 65-66.)  Thus, at the time of the hearing, it had been nearly a year since plaintiff had received treatment or had access to medications.  The ALJ noted this lapse in treatment in ordering a post-hearing consultative examination.  (Tr. 40-41; ***see also*** Tr. 253

---

[7] Since that time, Oklahoma voters approved a ballot measure to accept Medicaid expansion under the Affordable Care Act effective July 1, 2021.  (***See*** Kaiser Family Foundation, *Status of State Medicaid Expansion Decisions: Interactive Map (*Nov 19, 2021) (available at: https://www.kff.org/medicaid/issue-brief/status-of-state-medicaid-expansion-decisions-interactive-map/) (last accessed:  January 10, 2022).)

9

(representative's May 29, 2019, request for consultative examination).)

In addition to a thorough narrative report (Tr. 877-882), Dr. Danaher completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental).  Therein, he suggested that plaintiff had "marked" restriction in his abilities to make judgments on complex work-related decisions and respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 874-875.)  These findings address the so-called "paragraph B" criteria under the Acting Commissioner's listing of impairments.[8]  *See* 20 C.F.R., Pt. 404, Subpt. P, app. 1, § 12.04B.  A claimant's mental impairment meets the requirements of the listing if, *inter alia*, it results in a "marked" limitation in at least two of the four paragraph B criteria.[9]  Thus, if Dr. Danaher's opinion had been found wholly persuasive, plaintiff would have been found presumptively disabled.

The Acting Commissioner suggests Dr. Danaher's opinion actually supports only a single marked limitation because the ability to make judgments on complex work-related decisions is irrelevant.  I reject this argument.  For one thing, if consideration of this factor were indeed irrelevant, one must wonder why the Social Security Administration chooses to inquire about it on the form it asks medical sources to

---

[8] Under section 12.00 of the listings, which describes various mental disorders, each of the eleven diagnostic categories identified therein is defined by three criteria: a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria) and a set of impairment-related functional limitations (the paragraph B criteria).  Alternative functional criteria (the paragraph C criteria) are included for certain classes of disorders.  A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the capsule definition and the criteria of both paragraphs A and B, or A and C, where appropriate, are satisfied.  20 C.F.R., Pt. 404, Subpt. P, app. 1, § 12.00A.

The areas of mental functioning measured by the paragraph B criteria for listing 12.04 are the abilities to:  (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § Pt. 404, Subpt. P, app. 1, § 12.04B.  The abilities required in each of these four areas are further described in section 12.00E.

[9] Designation of a limitation as marked connotes the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis" in that area "is seriously limited."  *Id.*, § 12.00F(2)(d).

complete in support of disability claims.  (*See* Office of Management and Budget, Form HA-1152, *Medical Source Statement of Ability to Do Work-Related Activities (Mental) (Revised Version)* (OMB: 0960-0662) (available at:  https://omb.report/icr/202101-0960-006/doc/108192200) (last accessed:  January 10, 2022).)  Moreover, although the Acting Commissioner refers the court to 20 C.F.R. § 416.922, that section does not address the step-three question of presumptive disability but instead prescribes conditions under which an impairment may be considered "non-severe," a step two determination.  *See* 20 C.F.R. § 416.922(a).[10]  The more relevant regulation, section 12.00E1 of the listings, which describes examples of work-related functioning related to the ability to understand, remember, and carry out instructions, refers simply to the ability to use "reason and judgment to make work-related decisions," without specifying how simple or complex those decisions might be.  20 C.F.R., Pt. 404, Subpt. P, app. 1, § 12.00E1.

Contrary to this opinion, the ALJ concluded plaintiff had only moderate limitations in the ability to understand, remember, and apply information, as well as moderate limitations in his ability to interact with others, the two areas where Dr. Danaher found marked limitations.  The reasons the ALJ cited for these conclusions are not particularly compelling, as none of the evidence cited by the ALJ in support is relevant to Dr. Danaher's findings regarding plaintiff's ability to make judgments and respond to

---

[10]  The Acting Commissioner's particular reference to subsection 416.922(b)(3) also is inapposite. That subsection provides that an impairment is not severe, and thus not disabling, where, *inter alia*, it does not significantly impact the ability to understand, carry out, and remember simple instructions.  By contrast, Dr. Danaher's opinion instead addresses plaintiff's ability to make judgments on work-related decisions. That area of functioning is addressed by 20 C.F.R. § 416.922(b)(4), which inquires separately as to whether impairment impacts ability to use judgment without a level of complexity.

11

changes in a work-related setting.  (**See** Tr. 21-22.)[11]  Even so, such lapses may be excused where the ALJ's discussion and determination at later steps supports the step three conclusion.  **See Fischer-Ross v. Barnhart**, 431 F.3d 729, 733-34 (10th Cir. 2005) ("[H]armless error analysis . . . may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.") (citation and internal quotation marks omitted).

      Such is not the case here, however.  Although suggesting she found Dr. Danaher's opinion "somewhat persuasive," the ALJ's actual discussion does little to expatiate that determination.  Instead, she questioned Dr. Danaher's ability to conclude that plaintiff would have marked limitations in his ability to make judgments on complex work-related decision or respond appropriately to usual work situations and changes in a routine work setting because plaintiff had not work history.  (Tr. 32.)  This strikes the court as a rather unfair standard to which to hold both a medical source and a claimant; carried to its logical extreme, it would preclude a claimant who had never been able to work due to his impairments from ever being able to demonstrate disability.  Moreover, the question of how an allegedly disabling impairment might affect a person's ability to perform work-related activities is by its very nature somewhat hypothetical.  Indeed, the

---

[11] In particular, although the ALJ found plaintiff had only moderate limitations in his ability to interact with others based on Dr. Danaher's report that plaintiff stayed in touch with "a few friends" from Colorado (Tr. 879), plaintiff's testimony at the hearing revealed instead that these "friends" were "only, really, one," his former pastor, with whom he only exchanged text messages occasionally after relocating to Oklahoma (Tr. 55-56).  Moreover, the ALJ failed to note that in the very next sentence of his report, Dr. Danaher relayed that the consultative examination was only the fourth time plaintiff had left his house in the previous 13 months.  (Tr. 879.)

ALJ herself ultimately was required to make this very determination.  This purported reason therefore adds no ballast to the ALJ's determination to denigrate the persuasiveness of Dr. Danaher's opinion.

Nor do the ALJ's other explanations provide adequate support for that conclusion.  The ALJ cited to a July 2018 examination, performed shortly after plaintiff moved to Oklahoma, which described his thought processes as "linear, logical, [and] goal-directed," and his memory and concentration as "intact," with the ability to do "7-digit span"[12] and recall two of three words after five minutes.  (Tr. 32, 897.)  Yet none of this evidence was necessarily inconsistent with Dr. Danaher's conclusions, which addressed not memory and concentration *per se*, but the ability to make judgments and adapt to changes in a work setting.  To the extent the one might bear on the other, however, the ALJ did not adequately explain her calculus.  20 C.F.R. § 416.920c(b)(2) (noting duty to "explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision").   The ALJ's failure to provide a logically supportable basis for rejecting Dr. Danaher's restrictions constitutes reversible legal error in and of itself.[13] **See Haga v. Astrue**, 482 F.3d 1205, 1208 (10th Cir. 2007).

---

[12] "Digit span" refers to a test which "requires subjects to repeat series of digits of increasing length.  Digit span forward is a good measure of simple attention[.]"  It is not considered an indicator or memory, however; that skill is assessed by digit span backward.  (**See** C. Munro Cullum, *Neuropsychological Assessment of Adults*, ch. 4.11 (vol. 4 1998) (reprinted in Science Direct, *Digit Span, Assessment* (available at:  https://www.sciencedirect.com/topics/psychology/digit-span#:~:text= Digit%20span%20forward%20is%20a%20good%20measure%20of,is%20best%20considered%20as%20 a%20measure%20of%20attention) (last accessed:  January 10, 2022).)  The record on which the ALJ relied did not state which version of the test was administered to plaintiff.

[13] While it is not entirely clear how the ALJ's residual functional capacity assessment considered (if at all) Dr. Danaher's opinion regarding plaintiff's ability to make work-related judgments, she plainly rejected his opinion as to plaintiff's ability to adapt to routine changes in the workplace.  (**See** Tr. 24 (finding plaintiff had residual functional capacity, *inter alia*, to adapt to routine changes in a work setting).)

Above and beyond the logical disconnect in the ALJ's rationale, however, is the ALJ's failure to consider the ostensible reason for the inconsistency between Dr. Danaher's opinion and those of the state agency psychologists whose opinions the ALJ did find persuasive.  (Tr. 31-32.)  For the record provides ample support for the notion that plaintiff's condition worsened precipitously after his move to Oklahoma.  The state agency psychologists' opinions were based on evidence from late 2017 to mid-2018, while plaintiff had established a viable treatment plan and was doing comparatively well.  When Dr. Danaher saw plaintiff one year later, however, his treatment regimen had lapsed entirely.  It therefore seems little wonder that Dr. Danaher's assessment was more dire than those of the state agency psychologists.

Of course, an impairment which can be ameliorated by appropriate treatment is not disabling, **Pacheco v. Sullivan**, 931 F.2d 695, 698 (10th Cir. 1991); **Manning v. Colvin**, 182 F.Supp.3d 1156, 1161 (D. Colo. 2016), and the refusal of or failure to seek treatment may justify a conclusion of non-disability as well, **Miller v. Astrue**, 496 Fed. Appx. 853, 858 (10th Cir. 2012); **Gruenberger v. Berryhill**, 2019 WL 2422788 at *4 (D. Colo. June 10, 2019).  Yet such failures may be justified if the claimant is unable to afford treatment and/or does not have access to free or low-cost medical services.  **See Social Security Ruling** 16-3p, 2017 WL 5180304 at *9-10 (SSA Oct. 25, 2017); **Madron v. Astrue**, 311 Fed. Appx. 170, 178 (10th Cir. 2009).  It is the ALJ's duty to develop the record in this regard.  **Pierce v. Astrue**, 2011 WL 3440051 at *5 (D. Kan. Aug. 8, 2011).

The record here is replete with evidence suggesting plaintiff did not have adequate resources to afford treatment after he moved.  Plaintiff's mother testified at the

14

hearing that she had only her meager Social Security benefits to support herself and plaintiff. (Tr. 67.) Plaintiff also testified he had stopped taking his medications because he could no longer afford them once he relocated and was no longer eligible for Medicaid. (Tr. 58, 60.)[14] Moreover, although plaintiff attempted to obtain free mental health care in Oklahoma, the provider assigned to him had wanted to completely alter the medication regimen which had worked well for him. When plaintiff attempted to change providers, the clinic initially was reluctant and then failed to answer his repeated follow-up calls. (Tr. 65-66.)

The ALJ clearly was aware of and concerned about these issues. She told plaintiff she could not rely on his testimony alone to establish disability and noted "you're not taking medications, you're not getting any kind of talk therapy, support therapy, and there's no evidence you have a problem." (Tr. 59.) She made similar remarks to plaintiff's mother, suggesting plaintiff "obviously doesn't need [care], since he hasn't had any problems in the last year." (Tr. 67.)[15] Indeed, the very reason Dr. Danaher was consulted was due to the lack of treatment records in the preceding year.

Yet while noting plaintiff's mother's testimony to this effect (Tr. 33), the ALJ nevertheless failed even to acknowledge, much less address, how plaintiff's lack of

---

[14] Plaintiff has never lived independently and testified he would have been homeless if he had elected to stay in Colorado rather than relocate with his mother. (Tr. 60.) Plaintiff's mother testified that when she left him alone to go on a week-long trip, he did not leave the house even after he ran out of food. (Tr. 69.) The regulations provide that the Acting Commissioner will consider how assistance from family and other supportive arrangements impact a claimant's ability to function. *See* 20 C.F.R., Pt. 404, Subpt. P, app. 1, §§ 12.00C6 & D. However, such considerations appear not to have factored into the ALJ's analysis, either.

[15] The court is troubled by the ALJ's suggestions at the hearing that the facts that plaintiff's mother was not afraid of him or that she had not had to call elder care services somehow indicated his condition was not as disabling as alleged. (Tr. 67-68.) Nothing in the agency's regulations support a conclusion that circumstances must to come to such a desperate and violent pass for a finding of disability to be supportable.

15

resources might account for the discrepancy between Dr. Danaher's opinion and the earlier medical source opinions on which the ALJ ultimately relied.  This lapse smacks of impermissibly cherry-picking the record to support a finding of disability.  Just as an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence," **Carpenter v. Astrue**, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted), or "mischaracterize or downplay evidence to support her findings," **Bryant v. Commissioner, SSA**, 753 Fed. Appx. 637, 641 (10th Cir. 2018), it cannot be proper to discount a medical source opinion as not fully supported by the medical record without considering reasonable explanations for the apparent inconsistency.  The ALJ's failure to fully and fairly address that issue in this case further warrants remand.

I thus reverse and remand.  Although plaintiff requests a directed award of benefits, I find this case does not represent an appropriate circumstance for the exercise of my discretion in that regard.  **See Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993).[16]

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the conclusion of the Acting Commissioner through the Administrative Law Judge that plaintiff was not disabled is reversed;

2.  That this case is remanded to the ALJ, who is directed to

---

[16] By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

      a. Reevaluate the persuasiveness of Dr. Dahanher's opinion in light of and with adequate and appropriate discussion of the considerations outlined in this opinion and the various regulatory factors which bear on that determination;

      b. Further develop the record as she deems necessary, including, but not limited to, recontacting Dr. Danaher for clarification or an updated opinion and/or obtaining further medical records, consultative examinations, or other evidence;

      c. Reconsider her determinations at steps three, four, and five of the sequential evaluation in light of this evidence; and

      d. Reassess the disability determination; and

3. That plaintiff is awarded his costs, to be taxed by the clerk pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

Dated January 20, 2022, at Denver, Colorado.

                                                **BY THE COURT:**

                                                Robert E. Blackburn
                                                United States District Judge